May it please the Court, this appeal is about trial counsel's failure to present an effective defense on really the only issue that was disputed at trial, which was, why was it that Lisa Avila's lawyer, Mr. Skerrin, did not present an effective defense? Why was Mr. Lee present? And there was readily available, really indisputable evidence to support Mr. Lee's defense on that issue, and there were also numerous ways to attack the state's counterargument regarding house keys. The problem is the jury heard none of that evidence because of Mr. Lee's counsel's deficiencies. And so when you're faced with that problem, the failure to put on a defense on the only issue, on the only issue that was disputed at trial. Well, counsel did put on a defense. That is correct. The defendant himself testified about this moving theory, which was key to the idea that there was an eviction as an alternative explanation for his presence in the drug house. And his brothers testified. So there was a defense put on. It perhaps could have been stronger, but the Court of Appeals, the State Court of Appeals said the additional evidence wouldn't have mattered. There was no prejudice, even if it was deficient performance, not to chase down the fact that there was an eviction ongoing and actually put in that information that it was not a prejudicial error on the part of counsel because the officer's testimony completely decimated the alternative explanation. That's how I read this Court of Appeals decision. So Judge Sykes, there are a couple of separate pieces there to what you're saying. First, you're absolutely correct that there was a defense of some sort put on. And for that point, I would point the Court to Montgomery v. Peterson, cited in our brief at page 35, which describes the rule of law that the issue is not whether you put on the defense. I was only present because there was an eviction. And when you then fail to take the obvious additional step of picking up the telephone and calling the Milwaukee County Sheriff's Office… …what a reasonable jurist would conclude. That is correct, Judge Sykes. And the reason that prejudice was decided unreasonably by the Wisconsin Court of Appeals goes to one of the second things that you referenced, which was Officer Harms' testimony from the trial. The problem there is that when you are conducting the balancing analysis that a prejudice determination requires to see whether under Strickland there is a reasonable probability of prejudice, what you need to do is you need to first start with an accurate perception of what Officer Harms said. And for the reasons described in our briefing, the Wisconsin Court of Appeals simply overstates by a dramatic amount what Officer Harms says. The correct interpretation of Officer Harms' testimony is, at best, that he did not remember and did not know what was down in the basement in terms of materials moved by Mr. Lee and his brother, Jimmy. Well, there was follow-up, though, from the prosecutor on that. And he bolstered that statement by saying there wasn't anything that would have been consistent with somebody moving box springs and dressers and bed frames and all the rest of glass tabletops, etc. That's what the defendant's testimony was along with the brother's. And that was, in itself, conflicting. They couldn't get their story straight about what was being moved in. And that was clear from the trial court's ruling. Well, Judge Sykes, with regards to the what was being moved point, I don't think that that is an inconsistency as much as it's, if you're moving, if you're helping somebody move and it's not your stuff, it's very understandable that you're not going to remember precisely what was moved. On the point of what Officer Harms says, I'm very comfortable resting on our briefing where we describe and would also point the court to separate appendix 224, 226, and 227 where the relevant portions of Officer Harms' testimony are. Now, when you look at that, what Officer Harms actually says when he's asked, what did you see in the basement, is he says, I don't recall. That's his first statement. His second statement is, I wasn't paying attention because I didn't search the basement. His third statement is, I was just down there to look for the drugs that someone else found. I went down, looked at them, and didn't look at anything else. And then, finally, he makes the statement to which you referenced, which is, if there were any more of those sorts of things, I didn't see them. First, of those sorts of things is unclear as to what that is in the first place, but even taking that statement. Right, and the Court of Appeals said that if the defendant's story were true, those kinds of items would not have escaped the officer's notice. They're large items, so if they were telling the truth that this was really just moving day and they happened to be moving all this stuff into the basement of a drug house, the officer didn't see any evidence of that. So there are two problems with that characterization by the Wisconsin Court of Appeals that makes what they said unreasonable. The first problem with that is that it's really an argument from a complete absence of evidence, which is a logical fallacy in and of its own right, because Officer Harms, who has never asked, did you see anything else, that inference is what the Court of Appeals draws. That if he had been asked that question, well, he must have then said that. That's not what actually occurred because, frankly, the state prosecutor did a poor job questioning Officer Harms. That's not something that should be counted against Mr. Lee. That is, Officer Harms, the Wisconsin Court of Appeals decision reads on that point, would have sua sponte offered the statement that, well, I didn't see the various items that the Lee brothers testified that they moved down to the basement. That is perhaps the height of an unreasonable statement. I want to also move briefly to the complete failure to cross-examine Officer Birch regarding keys because when you're assessing prejudice and when you're assessing the unreasonable application of the Wisconsin Supreme Court of Strickland test, you also have to consider prejudice as a totality analysis. And I count at least five different ways that counsel could have, should have, and even admitted that she should have cross-examined Officer Birch on the only evidence tying Mr. Lee to actual keeping or maintaining of the home, the keys, and did not, she did not question him on the fact that he wrote no report, that he was testifying from memory ten months late. Right. All of that should have been done. The Court of Appeals said no prejudice again because once the eviction moving day story was so thoroughly decimated and it was clear that the keys to the drug house were found in the defendant's pocket, the issue of whether they were on a single key ring or on two key rings didn't really much matter. What's unreasonable about that on this record? So what's unreasonable about that is the exclusive basis for that conclusion once again is Officer Harms' testimony. So the Wisconsin Court of Appeals is using an ambiguous statement from Officer Harms' testimony as a prejudice panacea for everything that counsel did incorrectly. What should have happened is, at best, you're balancing an ambiguous statement against repeated, numerous deficiencies that completely failed to go to the only point at issue, which was why was Mr. Lee there. You need that point to meet one of the elements of the crime for keeping or maintaining. Presence isn't enough. And when you are making that balancing analysis, what the Wisconsin Court of Appeals did incorrectly was it effectively said, we just don't care about all of this prejudice on one side. We're going to rely on a single ambiguous statement from one officer instead. What are the dimensions of the basement? You know, I don't believe that is in the record anywhere, Judge Posner, and that is in large part because the state did not put on that evidence as well as the fact that original trial counsel did not investigate that information either. I'd like to. I'm sorry. I was going to reserve the rest of my time, but I see it's expired. Thank you, Mr. Scott. Thank you, Judge. Mr. Berg? Why don't we have the dimensions of the basement? Why don't we have the dimensions of the basement? I don't know. One possible. Well, it's important, isn't it? The smaller the basement, the likelier it was that if there was anything there, Harms would have seen it. If it's a large basement, if it's dark, if it's tall, it doesn't seem so elementary. The other thing is, why didn't the other officer, the one who went down to the basement first, why didn't he testify? I want to respond to the basement question because I think that is important. It's possible that the basement was a small square, and it would have been obvious that Harms would have seen a large… Well, anything is possible, but since we don't have the dimensions of the basement, we don't know whether it was small or large. That's true, but what's important is that it's Lee's burden to prove prejudice. He could have put on evidence about the dimensions of the basement, and the reason he didn't could be that the basement was a simple square, and it would have actually hurt his case to put on evidence of the dimensions of the basement, because it would have shown that Officer Harms clearly would have seen a large pile of furniture. The fact that it's not in the record doesn't hurt the state's case. If anything, it shows that Lee didn't meet his burden to prove prejudice. The Wisconsin Court of Appeals specifically made that point. It said, Lee gives us no reason to believe that Harms wouldn't have seen furniture in the basement if it was L-shaped, or if there was multiple rooms, or so on and so forth. So you're saying the government can put on a very crummy case, and as long as the defendant has a crummy lawyer, the defendant has no chance, has no defense. Well, with all due respect, I don't think the case was crummy. Yes, it was, because the dimensions of the basement are missing. And the other thing is, why didn't the other officer, the one who went down there looking for the boxes, why didn't he testify? I don't know why he didn't testify, but I think that... Well, it seems like a big hole in the government's case not to have the other, since Harms' testimony was vague, and the other officer apparently was the one who was supposed to be searching for the boxes. I don't understand. It was very badly handled. The evidence against Lee was very strong. I don't see it. What's the strong evidence? Can I survey it briefly? Lee was found alone in a drug house with the keys in his pocket. He had $582 in cash in his pocket in small denominations consistent with drug trafficking. His only excuse that he wanted a casino doesn't explain why he had $37, $1 bills, $23, $5 bills, etc. The cocaine on the table looked like it was in the middle of being packaged. It was in the cutoff corner of a sandwich bag, and there's an open pair of scissors on the ground, as if Lee had just snipped the bag and dropped the scissors when he was startled by the police. And it doesn't make sense that somebody else would leave $750 worth of cash and cocaine out in the open on a table. I mean, the fact that he's sitting in the room alone with drugs and a drug packaging kit is itself extremely powerful evidence. Lee needed a really good explanation for why he was there, and he didn't have one. His story had at least six different holes to it that he couldn't explain. Well, he had a story. Yeah, he had a story, and it was not a believable story. It was not a credible story. And so there's no reasonable probability that even if Lee's counsel had performed perfectly, that the jury would have believed his story. He doesn't explain the cash in his pocket. He doesn't explain the scissors on the floor. He doesn't explain why somebody else would leave cocaine out. He doesn't have a good answer to Officer Harms' testimony, and his story itself is highly implausible. Putting aside everything else, his story on its own terms sounds like an obvious made-up excuse. Theoretically possible, sure, but highly unlikely. Is there anything to suggest that the prosecutor knew in advance of trial what the defendant and his brothers would say about the items, the specific items they were moving into the basement? There's nothing in the record that I found about that indicating that the defendant would say this. I mean, that's the sort of thing that just evolves at trial, that the prosecutor doesn't have any advance notice about and so would not come prepared with the dimensions of the basement to respond to an argument that she's unaware is coming. Right. And if anything, you'd expect if that were an important issue, the post-conviction motion hearing, the Mockner hearing, which was an evidentiary hearing, and the defendant could have put that information in the record if it were indeed important to resolution of the Strickland claim. Right, that's exactly right. And Officer Harms testified before the brothers, and so he didn't hear their testimony in advance about exactly what they moved into the basement. So the prosecutor's questions to Officer Harms were sort of generic, did you see anything consistent with someone moving, and he said no. And remember, collectively, the brothers said that they moved a glass table, a couple of end tables, a couple of dressers, multiple box springs, some bed frames, and a recliner chair. I mean, that would have been a huge pile of furniture in the basement. Why did the prosecutor say that it was impossible that Tommy Lee was evicted that day? She misunderstood eviction law. Pardon? She misunderstood eviction law. It was a mistake. I can't hear you. She misunderstood eviction law. She was wrong. The prosecutor. Yeah. And we've conceded that that was deficient, that it was deficient for Lee's counsel not to respond to that mistake. But we think it's not prejudicial because there were so many holes in Lee's story. As I've said, Harms' testimony, the cash in his pocket, the scissors on the floor, the implausibility of his story, the lack of any explanation. Well, but shouldn't the defense counsel have corrected the prosecutor on that? Yes, definitely. But that's only the first half of the Strickland test, which is deficiency and prejudice. We've conceded deficiency, and we think there's no prejudice here. Now, the Wisconsin Court of Appeals picked the simplest route that it could to resolving this case. It picked the one thing that it thought most thoroughly undermined Lee's story, Harms' testimony, but it could have relied on any one of the other five things that I've mentioned. So the simplest way for this court to resolve the case as well is to hold, like the Wisconsin Court of Appeals did, that Officer Harms' testimony totally undermines Lee's reason for being in the house. If there are no further questions, I would ask this court to affirm the denial of the petition. Okay. Thank you, Mr. Baird. Mr. Skaram? I'd just like to briefly point out why there is reason that the defense was not believable, and the reason for that is prejudice. Plaintiff's counsel, I'm sorry, Mr. Lee's counsel fell down every single time she had an opportunity to present a defense. That's why there is no explanation. It's about Mr. Berg's point, which of course is made in the papers too, that the money and the drugs scattered around were compelling evidence that the defendant was involved in the drug trade and was not just there to move stuff for his brother. Judge Posner, the biggest problem with all of those facts that the state is discussing is that they don't answer whether he was keeping or maintaining, which is what he was actually convicted of. And in order to have keeping or maintaining, one of the elements of that is that he had to control the premises, and that means under Wisconsin law that he had to have the ability to deny people access to it. The trouble is that that was the defense, right? The defense that his counsel promised the jury in opening statements that she would present was, hey, I don't keep or maintain this location because I'm here to help my brother move. And when you walk down the deficiencies that she did, she never found the evidence from the Sheriff's Department. She never found the witness that the Sheriff's Department put on in the Mockner hearing showing that definitively that eviction occurred, that was the only objective piece of evidence that either side could have presented as to what was actually going on that morning, completely dropped the ball on that, completely dropped the ball with regard to keys and cross-examining officer harms. The state is correct in conceding that that was completely deficient, and the problem is all of the other pieces that they are pointing to, what those amount to is evidence of presence. There's no question, Mr. Wood was present. What about all the money, all his money in his pocket? So, again, the fact that, well, not to be flip about it, but the fact that I have money in my pocket doesn't mean that I exercise control over it. Well, you probably don't have $500 in your pocket, I'm guessing. In $5 bills. I actually looked this morning, Your Honor, and I have about $300, including 50s, 20s, 10s, and 5s. So the point is I don't exercise, but the bigger point is the money. The charges against you will be announced on the way. I'm going to take the fifth on that. The point is the amount of cash you have in your pocket says nothing about whether you exercise control or whether you are keeping or maintaining the location where you are found. It's irrelevant. Well, it's all about context. All of this evidence together builds up to a very powerful case for keeping and maintaining. You're a well-paid lawyer. The Lee brothers contextually were in a neighborhood where you wouldn't expect somebody to be walking around with that kind of cash in those denominations in a drug house next to drugs and the implements of the drug trade unless it explains the drug dealing. I mean, the coincidence is too great. Where would he have gotten that cash? Was he employed? You know, Judge Posner, he put on uncontested testimony that he had gotten that cash from the Pottawatomie Casino. And I think as this court takes the case, because there was no contrary evidence presented, you probably have to take that fact as a given regardless to Judge Sykes. No, we don't. This is not summary judgment. This is a criminal case. We have a guilty verdict, and we're here on deferential EDPA 2254D review. We don't have to accept the defendant's version of why that cash was in his pocket. Well, regardless, Judge Sykes, to your earlier point, the reason that the prosecution's case looks the way that it does, not conceding that it's a strong case for the reasons that we have described, the reason it looks the way it does is because Mr. Lee's counsel didn't bother to take the obvious steps. Did the defendant's lawyer go to the casino? They have records of, you know, people who win a lot of money. I don't have any evidence. So there's no indication that the defense lawyer checked with the casino. I suppose that if you wanted to think of that as an additional deficiency of defense counsel, it would be procedurally waived, but that could certainly have been an additional thing that defense counsel could have done but did not do at least as far as the record indicates. Procedurally waived, why? Because the, as I understand 2254 review, the defense counsel's failure to go to the casino to look for additional evidence that would have supported the defense, that could have been an additional ground for challenging the conviction. That was not raised in the state courts. Oh, I see. But as I say, Your Honor, that would certainly have been an additional thing that could have been done. The overarching point is counsel here did very little, and that is why we would ask that the district court's decision be reversed. Thank you. Okay. Well, thank you, Mr. Sperling.